UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

800537 ONTARIO INC., d/b/a ACURA-
WEST and GREGORY LEON,

    Plaintiffs,

v.

AUTO ENTERPRISES, INC., WILLIAM
LUTHER, and PHILIP TRUPIANO,

    Defendants.      Case No. 99-75615
_____/
                 Honorable Patrick J. Duggan
AUTO ENTERPRISES, INC.,

    Counter-Plaintiff,

v.

800537 ONTARIO INC., d/b/a ACURA-
WEST and GREGORY LEON,

    Counter-Defendants.
_____/

**<u>OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT
FILED NOVEMBER 29, 2004, BY COUNTER-DEFENDANTS 800537 ONTARIO
INC., d/b/a ACURA-WEST, AND GREGORY LEON</u>**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on November 10, 2005.

PRESENT: THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

1

This lawsuit arose from Counter-Defendants Acura-West's and Gregory Leon's sale of automobiles to Counter-Plaintiff Auto Enterprises, Inc. ("Auto Enterprises"), which Auto Enterprises imported into the United States, and Auto Enterprises' application and receipt of refunds or rebates from the Canadian Government for Goods and Services Taxes that Counter-Defendants Acura-West ("Acura-West") and Gregory Leon ("Leon") claim they never collected on those sales. The only claim remaining at this time in this prolonged lawsuit is Auto Enterprises' counterclaim against Acura-West and Leon alleging a violation of Section 1962(c) of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). Presently before the Court is Acura-West's and Leon's motion for summary judgment with respect to this claim, filed on November 29, 2004.

**Arguments**

In their motion for summary judgment, Acura-West and Leon argue that Auto Enterprises' RICO claim fails for four reasons. First, Acura-West and Leon argue that Auto Enterprises cannot establish two necessary elements of mail and wire fraud, which are the predicate acts alleged by Auto Enterprises to support its RICO claim: 1) a misrepresentation directly from Acura-West and/or Leon to Auto Enterprises; and 2) Auto Enterprises' detrimental reliance thereupon. Second, Acura-West and Leon argue that Auto Enterprises cannot establish the use of the *United States* mail and/or wire systems. Third, Acura-West and Leon contend that they did not induce Auto Enterprises to part with property or surrender a legal right. Finally, Acura-West and Leon argue that

2

Auto Enterprises fails to establish an "enterprise" separate from the liable "person."

## Requirements of RICO

A violation of 18 U.S.C. § 1962(c), the provision of RICO upon which Auto Enterprises relies to support its counterclaim, consists of the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cent. Distrib. of Beer, Inc. v. Conn*, 5 F.3d 181, 183 (6th Cir. 1993). "Racketeering activity" is defined as including mail fraud and wire fraud. 18 U.S.C. § 1961(1)(B). To allege a violation of the mail or wire fraud statutes, 18 U.S.C. §§ 1341 & 1343, it is necessary to show that: (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or wires or caused a use of the United States mails or wires in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud. *Id.* at 184 (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399-1400 (9th Cir. 1986)). As the Sixth Circuit has provided with respect to the defendant's scheme or artifice to defraud:

> [T]he defendant must make a false statement or omission of fact *to the plaintiff* to support a claim of wire fraud or mail fraud as a predicate act for a RICO claim . . . In our opinion, the fraud connected with mail or wire fraud must involve misrepresentations or omissions flowing from the defendant to the plaintiff. Although a general fraudulent scheme which incidentally affects a person may support other civil claims against the wrongdoer, the victim cannot assert a RICO claim absent evidence that the defendant made representations to the victim.

*Id.* (emphasis in original).

**Misrepresentations**

Acura-West and Leon contend that Auto Enterprises' RICO claim is premised upon allegedly false documents that Acura-West and/or Leon sent to the Canadian Customs and Revenue Agency ("CCRA") stating that Acura-West did not collect Goods and Service Taxes ("GST") from Auto Enterprises on the parties' transactions. Acura-West and Leon argue that this does not demonstrate a direct misrepresentation by them to Auto Enterprises.

Acura-West and Leon, however, ignore Auto Enterprises' additional claim that Leon misrepresented *to Auto Enterprises' owners*, Philip Trupiano ("Trupiano") and William Luther ("Luther"), that Acura-West was collecting GST on the parties' transactions that would be remitted to the CCRA when in fact Acura-West and Leon intended to claim (and did claim) to the CCRA that the parties' transactions were treated as zero-rate purchases and that no GST had been collected. Auto Enterprises contends that Trupiano and Luther agreed to the final purchase price for over one hundred automobiles that Auto Enterprises purchased from Acura-West based on Leon's misrepresentation that the price included GST which Auto Enterprises eventually would be able to recover from the CCRA. In other words, Auto Enterprises claims that it paid the agreed upon purchase price in reliance upon Acura-West's and Leon's misrepresentations that a portion of the price (7%) reflected GST that Auto Enterprises eventually would recoup.

**Use of the United States Mail and/or Wire Systems**

While Acura-West and Leon may have used foreign (Canadian) mail and/or wire systems to represent the parties' transactions to the CCRA, its alleged misrepresentations to Auto Enterprises clearly were made via the United States mail and/or wire systems. Auto Enterprises contends that the misrepresentations were made by Leon during the parties' negotiations, some of which occurred by telephone and facsimile. These alleged misrepresentations also were contained in one hundred or more separate GST-paid invoices that Leon sent Auto Enterprises via mail and/or facsimile. While Leon used the Canadian mail and wire systems, his communications traveled through United States mail and wire systems in order to reach Auto Enterprises in Michigan.

**Inducing Auto Enterprises to Part with Property**

As it has in a number of earlier motions, Acura-West and Leon argue that Auto Enterprises cannot establish that it parted with property as a result of their alleged misrepresentations since it eventually received the GST rebates related to its transactions with Acura-West from the CCRA. Acura-West and Leon further argue that under Canadian law a rebate applicant has no right to its rebates within a specified time period and that the remedy for an applicant that feels aggrieved by a delay in its rebates is to bring a motion in the appropriate court to require Revenue Canada's Minister to assess its application in a more prompt manner.

The Court previously addressed this issue in two of its opinions. *See* November 4, 2004 Opinion and Order Denying Plaintiffs' Motion for Summary Judgment; December 2, 2003 Opinion and Order Denying Plaintiffs' Motion for Summary Judgment. As the

5

Court has explained, Auto Enterprises contends that Acura-West's and Leon's claim to the CCRA that Auto Enterprises did not pay GST as part of the parties' transactions *was a proximate cause* of the delay in its receiving rebates and that this delay caused Auto Enterprises to incur financial loss. There is evidence from CCRA witnesses indicating that this in fact was *the* reason for the CCRA's delay in paying Auto Enterprises its rebates. There also is evidence from which a jury could conclude that Auto Enterprises suffered a concrete injury as a result of this delay.

## "Person" and "Enterprise"

Finally, to establish liability under Section 1962(c), a plaintiff must allege and prove the existence of two distinct entities: "(1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161, 121 S. Ct. 2087, 2090 (2001). In *King*, the plaintiff, a corporate promoter of boxing matches, sued Don King, the president and sole shareholder of a rival corporation, alleging that King had conducted his corporation's affairs in violation of Section 1962(c) of RICO. The Supreme Court held that a distinct "person" and "enterprise" required for RICO were established because the president of a corporation was alleged to have conducted the corporation's affairs through a forbidden "pattern of racketeering activity." *Id*. at 160, 121 S. Ct. at 2089. The Court reasoned: "The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due its different legal status. And we can find nothing in the statute that requires more 'separateness' than

that." *Id*. at 163, 121 S. Ct. at 2091.

Contrary to Acura-West's and Leon's assertion, Auto Enterprises has not named Acura-West as both the liable "person" and the "enterprise." Instead, Auto Enterprises has alleged that Leon (the "person") unlawfully conducted the affairs of Acura-West (the "enterprise") through a pattern of mail and/or wire fraud. Pursuant to *King*, this satisfies Section 1962(c)'s terms.

Accordingly,

**IT IS ORDERED**, that Acura-West's and Leon's motion for summary judgment is **DENIED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Sheri B. Cataldo, Esq.
Timothy D. Wittlinger, Esq.